FILED

2011 APR 19 AM 9:37

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF O
TOLEDO

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MUJTABAA L. MUBASHSHIR, *et al.*, | ) | CASE NO. 3:10 CV 2802 |
| | ) | |
| Plaintiffs | ) | JUDGE DAVID A. KATZ |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| ERNIE MOORE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiffs Mujtabaa L. Mubashshir, Michael Robert, Joseph Freeman, Eddy
Copes, Levio Mack, Terry A. Wurster, Charles Walker, Tyron Wells, Aaron Keeling, Jeremy Green,
Dustin Cristian, and Dwayne Wilson filed this action under 42 U.S.C. § 1983 and the Religious
Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. § 2000cc-1 against Ohio
Department of Rehabilitation and Correction ("ODRC") Director Ernie Moore, North Central
Correctional Institution ("NCCI") Warden Edward Sheldon, NCCI Chaplain Jaquelyn Burns, NCCI
Food Operations Director Patrick Omameh, ODRC Dietary Operations Manager Teresa Bell,
ODRC Religious Services Administrator Gary Sims, NCCI Institutional Inspector Taggart Boyd,
NCCI Deputy Warden of Religious Services Walker Williams, ODRC Religious Services Director

Wanza Jackson, and NCCI Mail Room Supervisor Lt. Bernardo. In the Complaint (Doc. No. 1), Plaintiffs allege the Defendants failed to accommodate the practice of their religion. They seek injunctive and monetary relief.

## Background

Plaintiffs claim they practice the "fiqh Hanafi school" of the Muslim faith, which they contend forbids the consumption of non-Halal meats. Pork is forbidden as part of this diet. In addition, Plaintiffs claim they are prohibited from eating any meat which has not been ritually slaughtered by a qualified Muslim reciting the name of Allah. To be qualified, the slaughterer must perform a purification rite of absolution prior to killing the animal. Plaintiffs further claim their meals must be prepared only by Muslims who have achieved a state of ritual purity. They indicate they must not consume foods with yellow dye number 5, red dye number 40, gelatin, animal shortening, and certain oils. They contend the prison makes available to inmates a grape beverage and a fruit roll snack which contain red dye number 5. They claim it is a Muslim's duty to check all the ingredients used to prepare Islamic meals or abstain from eating those meals altogether. Plaintiffs assert the ODRC's failure to provide regular, nutritious meals consistent with this sincerely held belief places a substantial burden on the exercise of his religion because they are required to forego all meals.

In addition, Plaintiffs claim they were denied equal protection. They state that on August 1, 2008, and again on September 18, 2009, they were denied a "clean and adequate place" in which to conduct services because other religious groups were in the chapel area. (Compl. at 17.) They further allege Jewish inmates are provided with a Kosher diet that Defendants purchase from an outside vendor. They assert this is a denial of equal protection.

2

Finally, three Plaintiffs contend their Requests for Religious Accommodations were rejected. Mr. Freeman and Mr. Wurster were denied Requests for Religious Accommodations because they used a photocopy of another inmate's Request form rather than submitting one which they completed. Mr. Wurster was also told he had exceeded the number of religious conversions the prison would recognize in one year. He converted from Christianity to Asatru (Odinism) on June 17, 2010, and then attempted to convert from Asatru to Islam three months later in September 2010, using the photocopy of another inmate's form. The ODRC recognizes only one conversion in a twelve month period. Mr. Green claims he was denied an accommodation, but does not specify which accommodation he was denied, or what reason was given for the denial.

## Analysis

A district court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, as soon as possible after docketing, if the court concludes that the complaint fails to state a claim upon which relief may be granted, or if the plaintiff seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; *Siller v. Dean*, No. 99-5323, 2000 WL 145167 , at *2 (6th Cir. Feb. 1, 2000); *see Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); *In re Bendectin Litig.*, 857 F.2d 290, 300 (6th Cir.1988) (recognizing that federal question jurisdiction is divested by unsubstantial claims). For the reasons stated below, this action is dismissed pursuant to 28 U.S.C. § 1915A.

### A. Parties

As an initial matter, while there are thirteen individuals listed as Plaintiffs in this action, they are not all properly before this Court. Cases in the courts of the United States may be

3

conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. The statute clearly

makes no provision for a non-attorney's representation of others. A litigant who wishes to proceed

*pro se* must personally sign the complaint to invoke this court's jurisdiction. *See* 28 U.S.C. § 1654;

*Steelman v. Thomas*, No. 87-6260, 1988 WL 54071 (6th Cir. May 26, 1988). Only Mr. Mubashshir

signed the Complaint. Mr. Robert, Mr. Wurster, Mr. Walker, Mr. Wells, Mr. Keeling, Mr. Green,

Mr. Cristian, and Mr. Wilson submitted affidavits indicating that they wanted to be considered as

parties in this case. Mr. Jallow, Mr. Freeman, Mr. Copes, and Mr. Mack did not sign the Complaint

or submit Affidavits. Mr. Mubashshir's signature on the Complaint on their behalf is insufficient

to bring their claims before the Court. The Court will therefore consider only those claims asserted

by Mr. Mubashshir, Mr. Robert, Mr. Wurster, Mr. Walker, Mr. Wells, Mr. Keeling, Mr. Green, Mr.

Cristian, and Mr. Wilson.

## B. Halal Foods - Mr. Mubashshir

The Court notes that this is Mr. Mubashshir's fourth attempt to bring claims of non-

Halal foods before the Court. On March 31, 2009, Mr. Mubashshir, filed *Mubashshir v. Collins*,

No. 3:09 CV 738 (N.D. Ohio Mar. 31, 2009)(Zouhary, J.), on behalf of himself and five other

prisoners, alleging the same facts and asserting the same claims against the ODRC Director, the

NCCI Chaplain, the ODRC Religious Services Administrator and the NCCI Warden. Only Mr.

Mubashshir signed the Complaint and only his claims were considered. That case was dismissed

on its merits on August 18, 2009. On November 2, 2010, Mr. Mubashshir filed a second action, on

behalf of himself and nine other prisoners, asserting the same facts and the same claims against the

Defendants named in this action. *See Mubashshir v. Moore*, No. 3:10 CV 2501 (N.D. Ohio Jan. 25,

2011)(Zouhary, J.) None of the other prisoners, which included Mr. Roberts, signed the Complaint,

4

and again it was construed only against Mr. Mubashshir.  That case was also dismissed on its merits.
On November 12, 2010, Mr. Mubashshir filed a third action, on behalf of himself and nine other
prisoners, asserting the same facts and the same claims against the Defendants named in this action.
*See Mubashshir v. Moore*, No. 3:10 CV 2591 (N.D. Ohio Feb. 17, 2011)(Zouhary, J.)  None of the
other prisoners, which included Mr. Roberts,  signed the Complaint, and it again was construed only
against Mr. Mubashshir.  That case was also dismissed on its merits.  Mr. Mubashshir has now filed
a fourth action based on these same set of facts, and asserting the same claim for denial of properly
prepared Halal food.

The doctrine of *res judicata* precludes a party receiving a final judgment on the
merits of a claim from bringing a subsequent lawsuit on the same claim or from raising a new
defense to defeat the prior judgment.  *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918
F.2d 658, 660 (6th Cir. 1990).  It bars relitigation of every issue actually brought before the Court
and every issue or defense that should have or could have been raised in the previous action.  *Id.*
This doctrine promotes the finality of judgments, discourages multiple litigation, and conserves
judicial resources.  *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224 (6th Cir. 1981).  A subsequent
action will be subject to a *res judicata* bar only if the facts supporting the claims and the evidence
necessary to sustain each action are the same.  Both of these requirements are met in this case.  Mr.
Mubashshir is therefore precluded from litigating this matter for a fourth time.

The Court cautions Mr. Mubashshir that it will not entertain a fifth action filed by
him, either alone or in conjunction with others, asserting this same claim.  It is taken verbatim from
his previous pleadings.  Federal Courts have both the inherent power and constitutional obligation
to protect their jurisdiction from conduct which impairs the ability to carry out Article III functions.

5

*Procup v. Strickland*, 792 F.2d 1069, 1073 (11th Cir. 1986). Moreover, this Court has the responsibility to prevent litigants from unnecessarily encroaching on judicial machinery needed by others. Id. To achieve these ends, the United States Court of Appeals for the Sixth Circuit has approved enjoining vexatious and harassing litigants by requiring them to obtain leave of court before submitting additional filings. *Filipas v. Lemons*, 835 F.2d 1145 (6th Cir. 1987); *Wrenn v. Vanderbilt Univ. Hosp.*, Nos. 94-5453, 94-5593, 1995 WL 111480 (6th Cir. Mar. 15, 1995)(authorizing a court to enjoin harassing litigation under its inherent authority and the All Writs Act, 28 U.S.C. § 1651(a)(citations omitted)).[1] Mr.Mubashshir has established a pattern of filing Complaints in this Court which are patently frivolous and vexatious, and which appear calculated to harass the defendants and abuse the judicial process. If he continues to file pleadings which assert these same claims, he may be declared a vexatious litigant and enjoined from filing actions without first obtaining leave of Court.

## C. Halal Foods - All Remaining Plaintiffs

The First Amendment to the United States Constitution states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." The First Amendment is applicable to the States by virtue of its incorporation by the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Inmates retain the First Amendment right to exercise their religion subject to reasonable restrictions and limitations. *See Bell v. Wolfish*, 441

---

[1] Other circuits have endorsed enjoining these types of filers. *See, Day v. Allstate Ins. Co.*,788 F.2d 1110 (5th Cir.1986); *Cotner v. Hopkins*, 795 F.2d 900 (10th Cir. 1986); *Procup v. Strickland*, 792 F.2d 1069 (11th Cir. 1986); *Franklin v. Murphy*, 745 F.2d 1221 (9th Cir. 1984); *In re Martin-Trigona*, 763 F.2d 140 (2d Cir. 1985); *In re Green*, 669 F.2d 779 (D.C. Cir. 1981)(per curiam); *Green v. Warden*, 699 F.2d 364 (7th Cir. 1983), *cert. denied*, 461 U.S. 960 (1983); *Green v. White*, 616 F.2d 1054 (8th Cir. 1980) (per curiam); *Gordon v. Dep't of Justice*, 558 F.2d 618 (1st Cir. 1977); *Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir. 1972).

U.S. 520, 549-51 (1979). The Court must first determine whether Defendants' policies deprive the Plaintiffs of the right to express their religion. More specifically, the Court must evaluate the quality of the claims alleged to be religious. *See Wisconsin v. Yoder,* 406 U.S. 205, 215 (1972). To be protected by the Constitution, the particular religious ritual must be central or indispensable to the inmate's religious observances and must be a conviction shared by an organized group as opposed to a personal preference. *Sequoyah v. T.V.A.,* 620 F.2d 1159, 1164 (6th Cir.1980). If the tenet is not fundamental, dismissal is appropriate. *See Abdur-Rahman v. Michigan Dept. of Corrections,* 65 F.3d 489, 492 (6th Cir.1995). If the belief is found to be a fundamental tenet and the Defendants' policy is deemed to place a substantial burden on that tenet, then the Court must determine whether the Defendants' policy "is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987).

The RLUIPA, which expands the First Amendment protections accorded prisoners with respect to their religious beliefs, specifically provides as follows:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ..., unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest."

42 U.S.C. § 2000cc-1(a). If a substantial burden on religion is found, a less deferential standard is applied for a RLUIPA claim than for a First Amendment claim asserted under 42 U.S.C. § 1983. *See Cutter v. Wilkinson,* 544 U.S. 709 (2005). Under RLUIPA, the initial burden of showing a substantial burden on a religious practice lies with the Plaintiffs. *See* 42 U.S.C. § 2000cc-2(b). The

7

term 'substantial burden' as used in RLUIPA should be given the same interpretation as the concept

of substantial burden on religious exercise in a First Amendment inquiry. *Living Water Church of*

*God v. Charter Twp. Meridian*, 258 Fed. App'x 729, 733-34 (6th Cir.2007).

   The Court, however, is unable to determine if Defendants are in violation of either

the First Amendment or RLUIPA because the Plaintiffs have not provided any information about

Defendants' policies or practices.  They mention a beverage and a snack item made available to

inmates which do not conform to the requirements of Halal.  There is no indication of the foods they

are being provided or how those items violate the tenets of their religion.  They set forth in great

length their beliefs and simply conclude by saying Defendants have denied them Freedom of

Religion and violated RLUIPA.

   Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and

plain statement of the claim showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 129

S.Ct. 1937, 1949 (2009).  The pleading standard of Rule 8 does not require detailed factual

allegations, but it demands more than an unexplained accusation of harm by the Defendant. *Id.* A

pleading that offers legal conclusions or a listing of the elements of a cause of action will not meet

the basic pleading requirements. *Id.*  A Complaint must contain sufficient factual allegations,

accepted as true, to state a claim to relief plausible on its face. *Id.* To meet this standard, Plaintiff

must provide:

> factual content that allows the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged.  The
> plausibility standard is not akin to a 'probability requirement,' but it
> asks for more than a sheer possibility that a defendant has acted
> unlawfully. Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.

*Id.* Although for purposes of 28 U.S.C. § 1915(e), the Court must take all of the factual allegations in the Complaint as true, it is not bound to accept as true a legal conclusion couched as a factual allegation. *Id* at 1949-50. In this case, even if the Court accepts as true all of Plaintiffs' factual allegations, they have only established the sincerity of their religious beliefs. That is only one element of these causes of action. There are no allegations pertaining to Defendants' actions or policies. Absent these allegations, the Court cannot reasonably conclude Defendants plausibly placed a substantial burden on Plaintiffs' practice of their religion.

Plaintiffs equal protection claims are similarly flawed. They assert that the Defendants provide kosher meals to Jewish inmates which they purchase from an outside vendor. They conclude they were denied equal protection. To state an equal protection claim under § 1983, Plaintiffs must allege they were treated differently from a similarly situated group and that the Defendants acted with an intent or purpose to discriminate against them based upon their membership in a protected class. *Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000). As an initial matter, Plaintiffs do not allege facts reasonably indicating they received unequal treatment. They merely contend Jewish inmates are given food which does not violate kosher laws. They do not describe the food the Jewish inmates are provided or the food the Plaintiffs are provided. Simply put, they do not allege Jewish inmates are receiving a benefit which they are denied. Moreover, Plaintiffs do not allege the Defendants had the intent to discriminate against them. Discriminatory purpose implies more awareness of consequences. *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Defendants must select a particular course of action at least in part "because of," not merely "in spite of" its adverse effects upon an identifiable group. *Id.* There are no allegations in the Complaint suggesting Defendants intended to discriminate against Muslim

9

inmates.

## D. Rooms for Religious Services

Plaintiffs allege that on August 1, 2008, and again on September 18, 2009, they were denied a "clean and adequate place" in which to conduct services. (Compl. at 17.) The claim pertaining to August 1, 2008 is time barred. Ohio's two year statute of limitations for bodily injury applies to §1983 claims. *LRL Properties v. Portage Metro Housing Authority*, 55 F. 3d 1097 (6th Cir. 1995). This action was filed on December 10, 2010, well beyond the expiration of the two-year statute of limitations period. There would be no purpose in allowing this matter to go forward in view of the fact that it is clearly time-barred. *See Fraley v. Ohio Gallia County*, No. 97-3564, 1998 WL 789385, at *1 (6th Cir., Oct. 30, 1998)(affirming *sua sponte* dismissal of *pro se* §1983 action filed after two year statute of limitations for bringing such an action had expired).

The incident which on September 18, 2009 does not state a claim of constitutional dimension. Although the pleading does not elaborate on the nature of this claim, Mr. Mubashshir includes a grievance he submitted which provides some information. (Compl. Ex. Y3.) The grievance indicates that there was a Kairos "retreat" event planned at the prison from September 17, 2009 through September 20, 2009. The entire chapel area of the prison was booked for his event, as 50 volunteers came in to conduct a program retreat for 48 inmates. Kairos is a Christian based event, however, it was open to inmates of all faiths. The Muslim prayer service on September 18, 2009 could not be accommodated and inmates were permitted to conduct prayers in their living area by themselves. A Muslim service scheduled for September 20, 2009 was moved to the education department.

The Court must first determine whether the Defendants substantially burdened the

10

Plaintiffs' practice of a fundamental tenet of their religion, and if so, whether their actions were "reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89. Isolated acts or omissions, however, do not constitute a substantial burden on religious freedom. *Gunn v. Kentucky,* No. 5:07CV-P103-R, 2010 WL 2555756, at *5 (W.D.Ky. June 18, 2010); *see Randall v. McLeod,* No. 95-10106, 1995 WL 581973, at *4 (5th Cir. Sept.15, 1995)(affirming district court's dismissal of First Amendment claim based on plaintiff not getting a pork-free meal on two occasions); *White v. Glantz,* No. 92-5169, 1993 WL 53098, at *2 (10th Cir. Feb.25, 1993) (finding that an "isolated occurrence of being given two meals with green beans and bacon" did not violate a Muslim inmate's First Amendment rights);*Greenberg v. Hill,* No. 2:07-CV-1076, 2009 WL 890521, at *6 (S.D.Ohio Mar.31, 2009) ("[I]solated or sporadic government action or omission is de minimis and does not constitute a 'substantial burden.' "); *Marr v. Case,* No. 1:07-cv-823, 2008 WL 191326, at *5 (W.D.Mich. Jan.18, 2008) ("The one time deprivation of a kosher eating utensil does not amount to a substantial burden of Plaintiff's ability to exercise his religion."). Denial of services in the chapel on two occasions are isolated instances. Plaintiff's First Amendment rights were not violated.

### E. Denial of Requests for Accommodation

Finally, two Plaintiffs claim their requests for religious accommodation have been denied. Mr. Wurter submitted a photocopy of another inmate's Request for Religious Accommodation form. The form seeks to establish then nature and sincerity of the inmate's beliefs by requiring the inmate to articulate the basis of the accommodation. Mr. Wurter was told his form was rejected because a photocopy of another inmate's form could not be used in place of the inmate's own declaration. Moreover, Mr. Wurter converted from Christianity to Asatru on June 17,

11

2010, and a little over 2 months later used the photocopied form to request a change in his religious status to Muslim. He was also told ODRC regulations recognize only one change of religion in a twelve month period of time. Mr. Green was denied an accommodation, but does not specify which accommodation he was denied, or what reason was given for the denial. These Plaintiffs claim these regulation violate the First Amendment.

As an initial matter, the mere assertion of a religious belief does not automatically trigger First Amendment protections. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protections. *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir.2000). The prison must maintain some aspect of control in accommodating prisoners' religious requests in order to protect the security of the institution and avoid unnecessary expenses incurred for those who would assert false religious claims to gain special privileges or to disrupt prison life. *Ochs v. Thalacker*, 90 F.3d 293, 296 (8th Cir.1996). To that end, it is not inherently unconstitutional for prison officials to make inquiries regarding the sincerity and religious nature of an inmate's belief when the inmate requests special treatment.[2] *Id.* at 52 n. 3.

The prison's policies regarding these inquiries into the sincerity of religious beliefs will be constitutional if they are reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89-90; *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir.2005). Prison officials receive "wide-ranging deference in the adopting and execution of policies and practices that in their

---

[2]    *See Houston v. Riley*, No. 2:07-cv-63, 2009 WL 596499, at *5 (W.D.Mich. Mar. 6, 2009); *McQuiter v. Burnett*, No. 2:07-cv-63, 2008 WL 4534110, at *10 (W.D.Mich. Sept. 26, 2008); *see also Lovelace v. Lee*, 472 F.3d 174, 208 (4th Cir.2006) (holding that prisons may ensure that religious accommodation extends only to sincere observers); *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir.1999) (holding that prison officials may inquire into the sincerity of an inmate requesting kosher meals); *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir.1987) (holding that prison authorities may deny insincere requests for religious meals).

judgment are needed to preserve internal order and discipline and to maintain institutional security." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir.2001) (quoting *Bell*, 441 U.S. at 547). If prison administrators were required to blindly accept every request made by a prisoner espousing some religious reason without requiring some minimal showing of a sincerely held beliefs, their ability to run their prisons effectively would be compromised. *See DeHart*, 227 F.3d at 52. In the present case, the prisoners are merely asked to personally complete a form explaining the religious need for the requested accommodation. The form asks the inmate to personally articulate why he believes a specific accommodation is required by his religion. Submitting a photocopy of another inmate's declaration of belief does not demonstrate any personal knowledge or sincerity of belief in the religious accommodation requested. Similarly, prisoners who claim to experience numerous religious conversions per year are more likely to be seeking specialized privileges or attempting to disrupt prison life than to sincerely embrace the faith and its tenets. *Id.* Limiting the number of distinct religions for which a prisoner may request an accommodation within in a twelve month period is another means of weighing the sincerity of the inmate's beliefs. *Id.* There is a rational connection between the policy asking a prisoner to explain in his own words why he believes a particular accommodation is required, and the prison's legitimate penological budgetary and security interests associated with providing specialized religious diets or group meetings and activities. The policies applied by the prison are not unreasonable and did not violate Plaintiff's First Amendment rights.

Plaintiff Green states only that his request for religious accommodation was denied. He does not indicate what request he made or what reason was given for its rejection. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the

13

claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 129 S.Ct. 1937, 1949 (2009).

Rule 8 does not require the plaintiff to provide detailed factual allegations, but it does demand more

than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A pleading that offers

legal conclusions or a simple recitation of the elements of a cause of action will not meet this

pleading standard *Id.* Mr. Green's claim does not contain sufficient factual allegations to meet the

pleading requirements of Rule 8.

### Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915A. Further, the

court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision could not be

taken in good faith.[3]

IT IS SO ORDERED.

DAVID A. KATZ
UNITED STATES DISTRICT JUDGE

---

[3]      28 U.S.C. § 1915(a) provides, in pertinent part:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not
taken in good faith.

14